The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DEVINARE ANTWAN PARKER,<br>Defendant. | No. CR20-84 RSM<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

## I. INTRODUCTION

Parker brought an improvised firearm to a peaceful but volatile protest. When he was arrested with the gun, he told the police that he was planning to kill police with it. After he was charged, Parker repeatedly violated the conditions of release. He also made numerous videos of himself using drugs, displaying a large bag of marijuana and cash, and possessing a firearm and clip. Taking all of these facts into consideration, the government recommends that this Court sentence Parker to 27 months in prison.

## II. BACKGROUND

### A. Parker's Offense Conduct

In May 2020, the nation was just a couple of months into the COVID-19 pandemic. The governor's "Stay Home—Stay Healthy" order was still in effect. School had been canceled for the remainder of the academic year, and schools wouldn't fully reopen until April 2021. Most people who could were working from home. The research

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

on the disease was such that there was not yet a state-wide mask mandate.[1] A vaccine was months away.

During this unprecedented health crisis, four police officers in Minnesota murdered George Floyd, a 46-year old Black man. The killing was captured on a bystander's camera; the footage was widely shown and shocked the conscience of the nation. Mass public demonstrations began locally, across the country, and indeed across the world. Several days after the release of the video, large-scale public protests in Seattle continued, but some individuals used the cover of the protests to engage in violence, damage property, and otherwise cause widespread chaos. In light of these threats to public health and safety, the mayor imposed a curfew from 5:00 p.m. to 5:00 a.m., beginning on May 30, 2020, and continuing for several days.

On May 31, 2020, Parker was out and about in violation of the curfew. At approximately 11:30 p.m., he was walking down the middle of Third Avenue in downtown Seattle. He was carrying an open can of beer. Two police officers slowly drove a patrol car down Third Avenue. After seeing Parker, they stopped the car, contacted Parker, and ultimately arrested him. During a search of Parker incident to that arrest, officers located an improvised firearm on his person. When officers discovered and retrieved the firearm, Parker began shouting at the police. He yelled things like, "It's loaded," "I was going kill one of y'all, bro" "Take my gun, I was shooting that shit yesterday, I been trying to make the news." Ex. B, at 01:30–3:50. Despite this, the police stayed calm and professional in their interactions with him.

The firearm was constructed from two pieces of metal pipe, a cap, and a firing pin; a small laser pointer was attached to the side. The firearm could be fired by placing a shotgun shell into one part of the pipe and slamming the larger pipe into it. Parker also had shotgun shells that could serve that purpose, as well as a folding knife.

---

[1] *See* "Inslee announces statewide mask mandate," (June 23, 2020), available at https://governor.wa.gov/news/2020/inslee-announces-statewide-mask-mandate (last visited May 23, 2023).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The firearm meets the definition of a destructive device. Such a device may be lawfully possessed only if the possessor had registered the device in the National Firearms Registration and Transfer System. Parker had not done so. The device was also unsafe. When law enforcement test-fired it, the officer used primer caps or "blank" shotgun shells, as the homemade nature of the weapon and the fact that the firing mechanism was detached from the weapon made it unsafe to use live ammunition.

During the arrest, Parker yelled at the officers that he brought the gun to kill them all. He was placed into the rear of a transport van so that he could be taken to the West Precinct and processed for booking. While en route to the precinct, the van stopped at another location to pick up additional individuals who had been arrested that evening. A King County Sheriff's deputy who was assisting the Seattle Police Department that evening walked to the rear of the van with an arrestee. The rear doors of the van were open, and Parker was in this area of the van, although separated from the deputy by a metal gate. Parker approached the grate and spit through it at the deputy, hitting him in the right eye; he then said something about being infected with "COVID."

### B. Procedural History

Parker was initially charged in King County Superior Court. On June 8, 2020, the government filed a Complaint charging Parker with one count of *Unlawful Possession of a Destructive Device*. Dkt. 1. Not long after, King County dismissed its case so that Parker could be transported to federal court. He made his Initial Appearance on June 22,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2020, and stipulated to detention. Dkt. 8. A grand jury returned an indictment against him, charging the same offense as alleged in the Complaint. Dkt. 18. At his arraignment on July 29, 2020, Parker entered a plea of not guilty. The magistrate judge permitted him to reopen the detention hearing and released him on bond over the government's objection. Dkt. 25, 26.

Parker has significant mental health issues. In an attempt to address those issues in an effort to protect community safety, the government twice referred him to King County's Mental Health Court, which would have allowed him to plead guilty to misdemeanor offenses in exchange for extended supervision with wraparound services. He was initially referred on or about January 28, 2022. The referral was closed on April 6, 2022, because Parker "declined to engage with KC-RMHC [mental health court] treatment and screening conditions," "declined recommended and scheduled medications," refused "to take antipsychotic or mood stabilizing medications," and refused to engage the higher level of care recommended.

At Parker's request, the government re-referred the case to Mental Health Court on August 4, 2022. MHC required Parker to get a substance abuse evaluation, follow all treatment recommendations, and provide clean UAs for a two-week period before he could opt in. During this period, Parker told his probation officer that he was "struggling with abstinence" and wanted treatment. By November 22, 2022, after enormous effort by his attorneys, their staff, and the MHC staff, Parker was enrolled in both mental health treatment and substance abuse treatment. He then attended exactly one session of his substance abuse treatment, missed the next three, failed to appear for any of his UAs that were scheduled by MHC, and skipped his appointment with the MHC counselor. King County then closed out the referral again.

On February 22, 2023, Parker finally entered a plea of guilty as charged. Dkt. 101. The Plea Agreement requires the government to recommend a sentence within the guidelines range as determined by the Court at sentencing. Dkt. 103.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 9, 2023, the magistrate finally revoked Parker's bond due to multiple and ongoing violations relating to drug use. He is now in custody pending sentencing. The sentencing hearing is scheduled for June 8, 2023, at 2:00 p.m., before this Court.

**C. Parker's Post-Arrest Conduct**

As referenced above, Parker stipulated to detention at the Initial Appearance. Dkt. 8. He later moved to reopen detention once a release plan was in place. Dkt. 17. The magistrate judge heard from the defense and Parker's mother, Rene Nero, regarding his mental health challenges and the treatment plans in place were he released on bond. The release plan included Parker's mother acting as a third-party custodian and Parker living with Ms. Nero at her home in South Carolina and accessing mental health services through the family's insurance. Dkt. 23. Ms. Nero assured the court that she understood Parker's mental health challenges and would ensure that he remained complaint with his medication regimen. Dkt. 23. On these assurances, the magistrate judge released Parker to his mother and step-father as third-party custodians. Dkt. 26.

Parker did not comply with the conditions of his bond upon release or thereafter. First, he left his residence in South Carolina without approval and returned to Washington. He did not inform his probation officer in either state. Dkt. 30, 33. Ms. Nero also did not inform the probation officer or the court that her son had left her residence, despite her role as third-party custodian; apparently she was unaware he had departed. U.S. Probation learned of Parker's return to Washington when the supervising probation officer from South Carolina found out and advised the probation office here. Dkt. 33. Nonetheless, the magistrate judge did not revoke Parker's bond, instead amending it to remove the third party custodian condition. Dkt. 36, 37.

Things did not improve from there. Instead, Parker has regularly violated the conditions of his bond, mostly by using drugs. The violations included:

- Using marijuana on January 13, 2021 (Dkt. 42);
- Using marijuana on December 6, 2021 (Dkt. 51);
- Using marijuana on March 16, 2022 (Dkt. 57);

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Using cocaine on June 16, 2022 (Dkt. 66);
- Using marijuana on August 16, 2022 (Dkt. 77);
- Using marijuana on September 9, September 24, and September 27, 2022 (Dkt. 80);
- Using cocaine on September 9 and September 24, 2022 (Dkt. 80);
- Using marijuana on October 3, 2022 (Dkt. 83);
- Using cocaine on October 3, 2022 (Dkt. 83);
- Using marijuana on October 10, October 11, October 12, and October 24, 2022 (Dkt. 88);
- Using cocaine on October 10, October 11, October 12, and October 24, 2022 (Dkt. 88);
- Using cocaine on November 28, December 5, and December 14, 2022 (Dkt. 99);
- Using marijuana on November 28, December 5, and December 14, 2022 (Dkt. 99);
- Using alcohol on November 28 and December 5, 2022 (Dkt. 99);
- Using cocaine on January 18, January 24, and February 13, 2023 (Dkt. 106);
- Using marijuana on January 18, 2023 (Dkt. 106);
- Failing to report for UA testing on February 2, and March 6, 2023 (Dkt. 106);
- Failing to report for UA testing on March 6 and May 3, 2023 (Dkt. 107);
- Using psychedelic mushrooms on May 3, 2023 (Dkt. 107);
- Using acid (LSD) on May 3, 2023 (Dkt. 107);
- Using MDMA on May 3, 2023 (Dkt. 107);
- Using marijuana on May 3, 2023 (Dkt. 107);
- Using cocaine on March 24, April 10, and April 20, 2023 (Dkt. 107);
- Using alcohol on March 24, April 10, and April 20, 2023 (Dkt. 107);
- Using marijuana on March 24, April 10, and April 20, 2023 (Dkt. 107); and
- Using amphetamine on April 20, 2023 (Dkt. 107).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

This stunning list of violations does not include the positive UAs Parker provided to King County as part of the government's and defense counsel's efforts to get him into Mental Health Court.

Since Parker's bond was revoked, the government has learned that Parker's conduct was actually even worse than the violations above would suggest. Rather than trying to abstain so that he could get into mental health court and have his charge reduced to a misdemeanor, Parker regularly used marijuana and other drugs and created videos of himself doing so. The videos are set to music—some by known artists, and some that appear to be written and performed by Parker himself—that celebrate his use of marijuana and glorify drugs generally. One includes a comment that he won't smoke marijuana in this particular video because he has to go take his drug test.[2] In addition to this celebration of drug culture, the videos include images of Parker with a large baggie of marijuana and cash—strongly suggesting that he is not just using marijuana, but dealing it. And, some of the videos show Parker with a firearm and a clip, which he is prohibited from possessing both by the conditions of his bond and because he is a felon and drug user. A selection of screenshots from these videos are below. The government has also filed a CD containing the videos from which these screenshots were taken. Exhibit A. These videos are but a small selection of the more than 120 posted by and featuring Parker, available at https://www.youtube.com/@thearmyakapradap2040/videos (last visited June 2, 2023).[3] They range in age from four years ago to four weeks ago (immediately before the magistrate judge revoked Parker's bond and remanded him into custody). Most are less than two years old, meaning that the majority were posted while Parker was out on bond in this case.

---

[2] *See* Exhibit A, "He Ain't Hava Gun," at 0:02–0:18.

[3] The government assumes that Parker's claim that he works "as a rapper and music video producer," PSR ¶ 79, is a reference to this body of work.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



" Moved On " - Prada P ||My Brother's Keeper|| (Official HD Music Video) Shot by Lioness Productions
The ARMY aka Prada P
Subscribe
12,711 views May 19, 2022
" Moved On " - Prada P || My Brother's Keeper || (Official HD Music Video) Shot by Lioness Productions. Second Track From Prada P's upcoming mixtape My Brother's Keeper. Filmed in Downtown Seattle Washington by Lioness Productions. Audio and visuals produced by The Army. For beats, verses, videos and more hit me supersayainmaifa@gmail.com
Show less

Image from "Moved On":

Parker smoking marijuana with a large bag of marijuana and an apparent firearm in the background

" Played Out " - Prada P |My Brother's Keeper| (Official HD Music Video) Shotby Lioness Productions.
The ARMY aka Prada P
Subscribe
10,907 views Jun 3, 2022 WESTLAKE CENTER

Image from "Played Out":

Parker sitting next to a large bag of marijuana, an apparent firearm, and a clip, with cash spread on his lap

*United States v. Parker*, CR20-84 RSM
Government's Sentencing Memorandum - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



YouTube
" No Shirt " - Prada P ||My Brother's Keeper|| (Official HD Music Video) Shot by Lioness Productions
The ARMY aka Prada P
Subscribe
Share
Save
10,077 views May 17, 2022 SEATTLE

Image from "No Shirt":
Parker smoking marijuana, with a large bag of marijuana, an apparent firearm, and a clip in the background, and displaying a marijuana tattoo on his right hand

YouTube
EXOTIC GAS FREESTYLE - BIG ARMY OFFICIAL MUSIC VIDEO
The ARMY aka Prada P
Subscribe
Share
Save
3,419 views Apr 2, 2023

Image from "Exotic Gas Freestyle":
Bag of apparent mushrooms

*United States v. Parker*, CR20-84 RSM
Government's Sentencing Memorandum - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



YouTube
Search
"THE DOJA BAG MIXTAPE" DOJA BAG x BIG ARMY (PROD BY SUPERSAYAIN MAFIA) FILMED BY DALE
The ARMY aka Prada P
Subscribe
Share
Save
11,942 views May 4, 2023

Image from "The Doja Bag Mixtape":
Parker smoking marijuana, lying next to a woman displaying a large bag of marijuana

YouTube
Search
" Thinkin wit His D " - BIG ARMY Prod by S.S. ARMY
The ARMY aka Prada P
Subscribe
Share
Save
136 views Feb 14, 2023

Image from "Thinkin wit His D":
Parker displaying a bag of mushrooms

*United States v. Parker*, CR20-84 RSM
Government's Sentencing Memorandum - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III. SENTENCING GUIDELINES RANGE

The government agrees with the guidelines calculations set forth in U.S. Probation's Presentence Investigation Report. In particular, the government agrees that the base offense level is 18, based on the nature of the firearm. U.S.S.G. § 2K2.1(b)(3)(B); PSR ¶ 18. A two-level increase is applied if a destructive device but not a missile or rocket. U.S.S.G. § 2K2.1(b)(3)(B); PSR ¶19; Dkt. 103, ¶ 9. The government agrees that Parker has timely accepted responsibility for the offense, so a three-level reduction should also be applied. U.S.S.G. §3E1.1; PSR ¶¶ 25–26. This results in a total offense level of 17. With a criminal history category of II, *see* PSR ¶¶ 28–32, the resulting guideline range is 27 to 33 months. U.S.S.G. Ch. 5, pt. A; PSR ¶ 84.

## IV. SENTENCING RECOMMENDATION

As this Court is aware, it is to consider both the guideline range and the factors set forth in Title 18, United States Code, section 3553, in fashioning a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed training, care, or treatment. This Court is also to consider the nature and circumstances of the offense, the history and characteristics of the offender, the kinds of sentences available, the policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the defendant's crimes. Considering all of these factors, the United States respectfully asks this Court to impose a total sentence of imprisonment of 27 months in custody, within the guidelines range as calculated in the PSR.

### A. The Nature and Seriousness of the Offense

Parker's offense was very serious. The end of May 2020 marked an extraordinarily tense period of time in Seattle. Thousands of people were appropriately demonstrating in the streets against police brutality and racism generally. Some were using the cover of those protests to engage in violence and property destruction. Parker

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

walked into the middle of that volatile scene carrying a gun. It was not just any gun, but a destructive device that was so concerning that the police would not even live fire it. When police arrested him and found the gun, Parker loudly proclaimed that he had previously fired the gun and brought it to the protests with the intent to kill police officers. He followed up his claims by spitting into the face of an officer and making a remark referencing COVID.

**B. Parker's History and Characteristics**

Parker grew up in a close-knit and loving family. His mother and stepfather—who raised him from a very early age—both had stable jobs in the U.S. Army. Through the army, his family lived abroad for a period of time, exposing Parker to other cultures. He attended and graduated from high school, and began college. He also held jobs beginning at the age of 13. Parker reports he had a happy childhood, and it appears all his needs were met.

In 2015, at the age of 24, Parker began suffering serious mental illness, including psychosis, schizophrenia, and bipolar disorder. However, he has had significant family support and access to mental health services from the beginning. Unfortunately, Parker has often declined to access those services or take his medications. Those refusals continued during the pendency of this case. Despite substantial and repeated efforts of his lawyers and their staff, King County's Mental Health Court, and the government to develop a path whereby he could avoid a felony conviction and get wraparound services, Parker effectively refused to engage. He did not want to take medication, and he did not want to stop using drugs. He has had little regard for the consequences of these choices—and it is plain that Parker understood that he was required to stop using drugs and to take his medications, and knew that he could be returned to custody if he did not.

The government acknowledges that sometimes mental illness itself is a barrier to an individual understanding that he has a mental illness or needs to comply with court orders or a treatment regimen. That does not appear to be the case here. At the revocation hearing on May 9, 2023, the government explicitly raised concerns about whether

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Parker's mental health was deteriorating. Counsel told the Court that he had interacted with Parker when he was unwell, and that Parker was not showing that kind of confused thinking or other symptoms of being unwell now. Additionally, the videos that Parker posted to YouTube demonstrate that he is normally lucid, is sufficiently competent to put together staged music videos, and makes choices about using drugs. His drug use does not appear to be driven by addiction, but by pleasure and a general affinity for drug culture. While his judgment is obviously poor, the blame for his conduct since his arrest cannot reasonably be placed at the feet of either his mental illness or his addictions. Instead, the evidence is that he has been making conscious and informed—albeit bad– choices.

The government has struggled at length to reach a resolution in this case that would ensure community safety. For a long time, the government believed that this goal could be achieved through Mental Health Court. Parker's mental illnesses and presumed addictions obviously present a danger to the community, and they may well have contributed to his offense. MHC offered an avenue for intensive oversight and supportive treatment to mitigate those risks. Unfortunately, it appeared that everyone wanted such a resolution except for Parker. Rather, he wants to continue to use—and probably sell— drugs. It is plain that a substantial custodial sentence is the only tool that this Court has remaining to impress upon Parker the seriousness of his conduct, the requirement that he stop using drugs, and the necessity of him attending to his mental health. A significant period of custody will also have the effect of interrupting Parker's misbehavior and allowing his mental health care to stabilize.

/ / /

/ / /

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 27 months of incarceration. In addition, the government recommends that this Court impose three years of supervised release, along with all of the conditions proposed by U.S. Probation. Upon release, much more stringent supervision than he has had to date will be required to keep Parker on the right path.

DATED this 2nd day of June, 2023.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*/s/ Erin H. Becker*
Erin H. Becker
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-2905
Fax: (206) 553-0882
E-mail: Erin.Becker@usdoj.gov

*United States v. Parker*, CR20-84 RSM
Government's Sentencing Memorandum - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970